IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERWICK AREA LANDLORD            :
ASSOCIATION, et al.,             :
                                 :          Civil Action No. 4: 07-CV-316
                 Plaintiffs,     :
                                 :
        v.                       :
                                 :          (Judge McClure)
BOROUGH OF BERWICK,              :
                                 :
                 Defendant.      :
                                 :

**M E M O R A N D U M**

July 16, 2007

**BACKGROUND:**

On February 20, 2007, plaintiffs, the Berwick Area Landlord Association as well as various individual residential rental property owners and tenants in the Borough of Berwick, Pennsylvania, commenced this action with the filing of a complaint pursuant to 28 U.S.C. §§ 1331 and 1343 against defendant, the Borough of Berwick ("Berwick").  In the complaint, plaintiffs allege that the "Landlord Registration Ordinance" enacted by the Borough of Berwick on January 23, 2007 violates various sections of the United States Constitution as well as the Pennsylvania Constitution and Pennsylvania law.

On March 5, 2007, plaintiffs filed a motion for a preliminary injunction.

1

(Rec. Doc. No. 3.)  After several case management conferences, defendant voluntarily agreed to refrain from enforcing the ordinance and also indicated that the ordinance was likely to be amended.

On April 16, 2007, defendant repealed the foregoing ordinance and enacted a new "Landlord Registration Ordinance." ("Amended Ordinance").  On May 7, 2007, plaintiffs filed an amended complaint alleging that the Amended Ordinance violates various sections of the United States Constitution as well as the Pennsylvania Constitution and Pennsylvania law.  (Rec. Doc. No.  15.) Specifically, plaintiffs allege that the Amended Ordinance: 1) violates due process due to vagueness (Count I); 2) violates substantive due process (Count II); 3) violates the Equal Protection Clause (Count III); 4) violates the Fourth Amendment (Count IV); 5) violates Pennsylvania's Borough Code (Count V); 6) violates Pennsylvania's Landlord and Tenant Act (Count VI); 7) violates the right to privacy set out in both the United States Constitution and Pennsylvania Constitution (Count VII); and 8) violates the limitations on police powers set out in the Pennsylvania Constitution (Count VIII).

On May 18, 2007, defendant filed a motion to dismiss.  (Rec. Doc. No. 18.) Opposing and reply briefs have been filed and the motion is ripe for disposition. Now, for the following reasons, the court will dismiss all federal claims and

decline to exercise jurisdiction over the state claims.

**DISCUSSION:**

### I.  Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), the court must view all allegations stated in the complaint as

true and construe all inferences in the light most favorable to plaintiff.  Hishon v.

King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183

(3d Cir. 1993).  In ruling on such a motion, the court primarily considers the

allegations of the pleading, but is not required to consider legal conclusions alleged

in the complaint.  Kost, 1 F.3d at 183.  At the motion to dismiss stage, the court

considers whether plaintiff is entitled to offer evidence to support the allegations in

the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A

complaint should be dismissed only if the court, from evaluating the allegations in

the complaint, is certain that under any set of facts relief cannot be granted.

Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Morse v. Lower Merion School

Dist., 132 F.3d 902, 906 (3d Cir. 1997); Markowitz v. Northeast Land, Co., 906

F.2d 100, 103 (3d Cir. 1994).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation

by dispensing with needless discovery and factfinding." <u>Neitzke v. Williams</u>, 490

U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where

there is a "dispositive issue of law." <u>Id.</u> at 326.  If it is beyond a doubt that the

non-moving party can prove no set of facts in support of its allegations, then a

claim must be dismissed "without regard to whether it is based on an outlandish

legal theory or on a close but ultimately unavailing one." <u>Id.</u> at 327.

## II.  The Amended Ordinance

The stated purpose of the Amended Ordinance is "in order to protect and

promote the public health, safety and welfare of its citizens, to establish rights and

obligations of owners and tenants relating to the rental of certain residential rental

units in the Borough of Berwick and to encourage owners and occupants to

maintain and improve the quality of rental housing within the community." §

141.2.  Furthermore, the Amended Ordinance makes findings that the "property

maintenance of many rental units [] has been somewhat lax." <u>Id.</u>  Similarly, "there

is a greater incidence of violation of various Codes of the Borough of Berwick in

residential rental properties" and the Amended Ordinance estimates that "over 75%

of all code violations in the Borough of Berwick occur in tenant occupied

structures." <u>Id.</u>  In order to achieve these goals and address these problems, the

Amended Ordinance imposes several obligations on residential rental property

4

owners and their tenants.

## A.  Obligations Imposed on Owners

The Amended Ordinance requires that the owner of every rental unit apply for and obtain a license for each rental unit prior to entering into a rental agreement for that unit.  § 141.6.1A.  With the application for a license, the owner must submit a floor plan of the unit drawn to scale.  § 141.6.1F.  The owner must also pay an initial license fee of fifty (50) dollars and an annual license and inspection fee in an amount to be established.  § 141.6.2B.

The Amended Ordinance also requires that the owner register each unit with the Code Enforcement Officer.  § 141.4.6.  This appears to be separate from the license requirement.  The owner must provide the Code Enforcement Officer with the names and addresses of the current tenants of each residential unit. § 141.4.6F(7).  The owner must maintain at each rental unit a document showing the names of the authorized tenants of that rental unit.  § 141.4.17B.  Owners who live more than fifteen miles from Berwick must designate a manager" who shall reside within fifteen miles of Berwick.  § 141.4.2.  Additionally, owners must permit annual inspections of all rental units by the Code Enforcement Officer and the failure to permit an inspection is considered a violation of the Amended Ordinance.  §§ 141.4.13A; 141.4.15G.

Furthermore, the Amended Ordinance states that "every owner shall be responsible for regulating the conduct and activities of the occupants of every rental unit which he, she or it owns in the Borough of Berwick." § 141.4.1.  The failure of the owner to regulate the behavior of occupants and guests in the common areas that results in "fighting , threatening, or other violent or tumultuous behavior," "unreasonable noise," or "creating a hazardous or physically offensive condition" is a violation of the Amended Ordinance.  § 141.4.9.  Furthermore, the Amended Ordinance states that "within ten days after receipt of written notice from the Code Enforcement Officer that an occupant of a residential rental unit has violated a provision of this Ordinance, the owner shall take immediate steps to remedy the violations and take steps to assure that there is not a reoccurrence [sic] of the violation." § 141.4.10A.  Twenty days after receipt of a notice of a violation, the owner must file a report with the Code Enforcement Officer notifying the officer of the actions taken to remedy the violation and prevent its recurrence.  § 141.4.10B.

Finally, the Amended Ordinance requires owners to provide "a summary [of the Amended Ordinance] in substantially the form set forth in Appendix A" prior to the commencement of the owner-tenant relationship.  § 141.4.5D.  Appendix A is entitled "Tenant's Covenants and Obligations" and appears to be a list of

6

obligations that an owner is expected to contractually impose upon his or her

tenants.  The list of obligations closely mirrors the obligations set out in Section

141.5 of the Amended Ordinance, which is entitled "Occupant Duties."

### B.  Obligations Imposed on Tenants

The primary obligation imposed on tenants that is at issue in this case is the

requirement that all tenants register with the Code Enforcement Officer at City

Hall by providing two forms of identification, one of which must consist of a state

issued driver's license or photo identification, the other of which can be a passport,

birth certificate, social security card, or other government-issued identification.  §

141.4.16A.  If a tenant is unable to present the information in person due to

disability or infirmity, the Code Enforcement Officer shall provide alternative

means for the tenant to register.  § 141.4.16D.

Additionally, tenants must conduct themselves in a manner that will not

disturb the peaceful enjoyment of the premises or nearby dwellings, and tenants

shall not engaged in disruptive conduct.  §§ 141.5.3; 141.5.6A.  Finally, tenants

must permit inspections by the Code Enforcement Officer at reasonable times and

upon reasonable notice.  § 141.5.9.  Finally, we note that Appendix A states that

"the issuance by any municipal officer of the Borough of Berwick of a Certificate

of Noncompliance with said Ordinance relating to the leased premises shall

constitute a breach of the rental agreement of which this addendum is an Ordinance." Thus, it appears that if a tenant violates the Amended Ordinance, he or she is in breach of the lease agreement.

### III.  Count I - Due Process Due to Vagueness

In the first count of the complaint, plaintiffs assert that the Amended Ordinance should be deemed unconstitutional because it violates due process due to vagueness.  Specifically, plaintiffs complain of the requirement that "a summary [of the Amended Ordinance] in substantially the form set forth in Appendix A shall be provided to the occupant at or before the commencement of the landlord relationship." (Pls.' Am. Compl., Rec. Doc. No. 15, at ¶ 88.)  They argue that Appendix A does not actually summarize the Amended Ordinance. (Id. ¶ 89.) Furthermore, they argue that Appendix A refers to a "Residential Rental Unit Occupancy Ordinance of the Borough of Berwick" which to their knowledge does not exist.  (Id. ¶ 90.)  Finally, they argue that Appendix A states that "the issuance by any municipal officer of the Borough of Berwick of a Certificate of Noncompliance with said Ordinance relating to the leased premises shall constitute a breach of the rental agreement of which this addendum is an Ordinance."  (Id. ¶ 91.)

The Due Process clause of the United States Constitution requires that a

statute or regulation not forbid or require the doing of an act in terms so vague that

a person of common intelligence must necessarily guess at its meaning and differ

as to its application.  Zwickler v. Koota, 389 U.S. 241, 248 (1967).  The purpose of

this doctrine is to give individuals a reasonable opportunity to know what is

prohibited or required and to ensure fair and non-discriminatory application of the

law.  Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972); Kreimer v.

Town of Morristown, 958 F.2d 1242, 1266 (3d Cir. 1992).  Yet, the degree of

vagueness allowed under the Constitution differs based on the type of statute.

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498

(1982); Ashton v. Kentucky, 384 U.S. 195, 200 (1966);   Civil statutes that do not

impact First Amendment rights, as opposed to criminal statutes or civil statutes that

do affect First Amendment rights, allow for greater tolerance because "the

consequences of imprecision are qualitatively less severe."  Village of Hoffman,

455 U.S. at 498.

Applying these standards to the portions of the Amended Ordinance that the

plaintiff alleges are vague, we do not find those sections to be unconstitutionally

vague.[1]   First, we note that the Amended Ordinance is a civil statute that does not

_____

[1] It is worth noting that both parties agree that the Amended Ordinance is
virtually identical to the "Student Housing Ordinance" that was enacted in the
Town of Bloomsburg, Pennsylvania.  The Bloomsburg ordinance was challenged

affect First Amendment rights.  Therefore, we allow for greater tolerance as stated

in <u>Village of Hoffman</u>.  Section 141.4.5D requires the owner to provide to the

tenant a summary of the Amended Ordinance "in substantially the form set forth in

Appendix A."  Thus, Appendix A is not part of the regulations set out in the

Amended Ordinance; it is simply an example of what the owner is required to

provide to the tenant.  Even to the extent that Appendix A could be considered part

of the regulations and subject to the vagueness doctrine, we do not find it to be

unconstitutionally vague.

As to plaintiffs' argument that Appendix A does not actually summarize the

Amended Ordinance, we find this argument without merit.  Appendix A is entitled

"Tenant's Covenants and Obligations."  This list of obligations closely mirrors the

obligations set out in Section 141.5 of the Amended Ordinance, which is entitled

"Occupant Duties."  Therefore, we find that it does summarize that portion of the

Amended Ordinance.

As to plaintiff's argument that Appendix A refers to a "Residential Rental

––––––––––––––––––––

as unconstitutional and upheld by this court in in <u>Bloomsburg Landlords Ass'n,
Inc. v. Town of Bloomsburg</u>, 912 F.Supp. 790 (M.D.Pa 1995),  <u>aff'd</u>, 96 F.3d 1431
(3d Cir. 1996).  The Bloomsburg ordinance also contains an Appendix A that is a
mirror image of the Amended Ordinance's Appendix A (aside from changing the
name of the municipality).  Nevertheless, we note that the plaintiffs in <u>Bloomsburg</u>
did not challenge the Appendix as vague, so this is not instructive on the vagueness
challenge in the instant case.

Unit Occupancy Ordinance of the Borough of Berwick," which to their knowledge does not exist, we also find this argument without merit.  A "person of common intelligence" would easily be able to determine that the ordinance the Appendix was referring to was the Landlord Registration Ordinance (which is what the Amended Ordinance is actually titled), the very ordinance to which the Appendix is attached.

With respect to the vagueness argument concerning the language that "the issuance by any municipal officer of the Borough of Berwick of a Certificate of Noncompliance with said Ordinance relating to the leased premises shall constitute a breach of the rental agreement of which this addendum is an Ordinance," we also find this language to not be unconstitutionally vague.  Appendix A is an example of what owners are expected to provide to a tenant.  Reviewing the Appendix in its entirety, it appears to be a list of obligations that an owner is expected to contractually impose on his or her tenants and as we mentioned, it closely mirrors the tenant's obligations set out in Section 141.5 of the Amended Ordinance. Although there appears to be a typographical error and the appendix should have stated "is a part" instead of "is an Ordinance," we find that a "person of common intelligence" would easily be able to interpret this language as meaning that if a tenant fails to abide by the Amended Ordinance and this results in the issuance of a

11

"Certificate of Noncompliance," this constitutes a breach of the lease agreement by

the tenant.  Furthermore, the language at the end of Appendix A refers to the

parties setting "their hands and seals the day and year first above written."  This is

a statement traditionally placed at the end of a contract and shows that the

document is intended for signature.  Thus, having found that the language

challenged in the Amended Ordinance is not unconstitutionally vague, we will

dismiss Count I of the amended complaint.

### IV.  Count II - Substantive Due Process

In their second count, plaintiffs assert that the Amended Ordinance is

unconstitutional because it infringes upon fundamental rights established by the

Constitution.  (Rec. Doc. No. 15, ¶ 97.)  Specifically, plaintiffs allege that the

registration and identification requirements imposed on residential tenants that are

not imposed on homeowners infringe upon liberties to which plaintiffs are entitled.

(Id.  ¶ 98.)  Furthermore, plaintiff alleges that the Amended Ordinance burdens the

fundamental right to establish a home and bring up children.  (Id. ¶ 97.)  Plaintiffs

also allege that the Amended Ordinance requires landlords to submit copies of their

residential leases to the local government upon request and that this violates

plaintiffs' right to contract.  (Id. ¶ 99.)  Finally, plaintiffs allege that the Amended

Ordinance makes landlords responsible for the conduct of their tenants and that

this is a violation of the landlord's substantive due process rights.  (Id. ¶ 105.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Supreme Court has held that this clause contains both a substantive and procedural component.  Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992) (quotations omitted).  The substantive component bars states from infringing upon fundamental rights that are deeply rooted in history and tradition unless the infringement is narrowly tailored to serve a compelling state interest.  Washington v. Glucksberg, 521 U.S. 702, 721 (1997).  When fundamental rights are not implicated or infringed, state statutes are reviewed under a rational basis test and upheld if it bears some rational relation to some legitimate end.  Vacco v. Quill, 521 U.S. 793, 799 (1997).  When applying a rational basis test to a statute, there is a presumption that the statute is valid. Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).  Additionally when applying rational basis, we are "not limited to considering the only goal stated by the legislature" but are "free to consider any conceivable legislative purpose so long as it reasonably could have been entertained by the legislature.  Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002) (citing Delaware River Basin Comm'n v. Bucks County Water & Sewer

Auth., 641 F.2d 1087, 1096 (3d Cir. 1981).

With respect to plaintiffs' argument that the Amended Ordinance imposes registration and identification requirements upon residential tenants that are not imposed on homeowners, we find this claim to be an Equal Protection claim. Indeed, plaintiffs' amended complaint sets forth the same claim under Count III of the complaint, which is entitled "violation of Equal Protection." Similarly, with respect to plaintiffs' argument that the Amended Ordinance burdens the fundamental right to establish a home and bring up children, we also find this to be an Equal Protection claim. This is because plaintiffs are alleging that the Amended Ordinance burdens a fundamental right of members of a certain class (tenants), as opposed to everyone (homeowners and tenants alike). Therefore, we will consider these arguments in the next section of this opinion.

With respect to the claim that it is a violation of substantive due process to require an owner to submit copies of residential leases to a local government upon request, we find the rational basis test to be the appropriate standard of review. There is no fundamental right deeply rooted in history and tradition to keep one's residential lease agreements hidden from government requests. Applying the rational basis standard, we believe there exists a rational basis for requiring an owner to submit a copy of a residential lease upon request. The Amended

14

Ordinance requires certain provisions to be placed into the rental agreements, and by requiring a copy of the rental agreement to be produced upon request, the local government is able to determine whether or not the owner is complying with the Amended Ordinance.[2]  Therefore, we find that requiring owners to submit copies of residential leases to the local government does not violate the substantive due process rights of the owners.

With respect to the claim that the Amended Ordinance makes landlords responsible for the conduct of their tenants, we also find rational basis to be the appropriate standard.  No fundamental right deeply rooted in history and tradition is being infringed upon.  Applying the rational basis standard, we find that the ordinance is rationally related to a legitimate governmental interest.  The Amended Ordinance requires owners to regulate the use of common areas and the behavior of occupants and guests in the common areas.  § 141.4.7.  The Amended Ordinance also states:   "Within ten (10) days after receipt of written notice from the Code Enforcement Officer that an occupant of a residential rental unit has

---

[2]   We note that plaintiffs do not appear to make any substantive due process arguments with respect to the requirement that owners place certain provisions into the lease agreement.  Yet, even if they did, we would conclude that this requirement does not infringe upon the right to contract because owners would only be placing a contractual obligation on tenants to do what the Amended Ordinance already requires the tenants to do.

violated a provision of this Ordinance, the owner shall take immediate steps to remedy the violation and take steps to assure that there is not a reoccurrence [sic.] of the violation." § 141.4.10A. This includes the filing of a report with the Code Enforcement Officer within twenty days after receipt of a notice of a violation. § 141.4.10B.

Plaintiffs' argument appears to contend that the Amended Ordinance imposes some form of strict liability upon owners for the conduct of their tenants without regard to whether they could have actually prevented the conduct. Because the Amended Ordinance has yet to be enforced, plaintiffs are launching a facial challenge to the Amended Ordinance. We note that in order to successfully challenge a statute on its face, a plaintiff must establish that no set of circumstances exist under which the statute could be valid. United States v. Salerno, 481 U.S. 739, 745 (1987). Put another way, the fact that a statute may operate unconstitutionally under some conceivable set of circumstances is insufficient to render it invalid on its face. Id. Applying this standard to plaintiffs' argument, we find it unnecessary to consider whether it would be a due process violation to hold owners accountable for the conduct of their tenants without regard to whether they could have prevented the conduct. We interpret the Amended Ordinance as imposing liability more along the lines of a negligence standard as opposed to strict

liability.  If a tenant violates the Amended Ordinance, the owner will receive notice

from the Code Enforcement Officer and hopefully take the appropriate remedial

action, which could include eviction of the tenant.  If he or she does not take

appropriate action and the tenant violates the Amended Ordinance again, there

appears to be some basis for finding the owner liable.

Finally, we note that we upheld a nearly identical provision in <u>Bloomsburg</u>

<u>Landlords Ass'n, Inc. v. Town of Bloomsburg</u>, 912 F.Supp. 790 (M.D.Pa 1995),

<u>aff'd</u>, 96 F.3d 1431 (3d Cir. 1996).  Plaintiff tries to distinguish this case from

<u>Bloomsburg</u> in two different ways.  First, they argue that Berwick is a "borough"

under Pennsylvania law and Bloomsburg is a "town," so they each have different

legislative powers under Pennsylvania law.  (Rec. Doc. No. 22, at 19.)  Second,

they argue that the ordinance in <u>Bloomsburg</u> applied only to student housing,

whereas the Amended Ordinance applies to all residential rentals.  (<u>Id.</u>)  We find

neither of these distinctions persuasive to change the outcome of our substantive

due process analysis concerning owner liability.  In <u>Bloomsburg</u>, we did not rely

on the fact that the ordinance applied only to student housing or that Bloomsburg is

a "town" when we rejected the challenge to the provision that made owners liable

for the conduct of their tenants.  More simply put, our substantive due process

analysis in that case would have been the same whether Bloomsburg was a city,

town, or borough and whether the ordinance applied to students or all residents.

Therefore, for all the reasons we have just discussed, we will dismiss Count II of

the complaint.

## V.  Count III - Equal Protection

In their third count, plaintiffs assert that the Amended Ordinance violates the

Equal Protection Clause of the Fourteenth Amendment.  Specifically, plaintiffs

assert that the Amended ordinance "creates an impermissible classification based

on status as a non-landowner" (Rec. Doc. No. 15, ¶ 109.)  Thus, by requiring

tenants to comply with registration and identification requirements that are not

imposed on homeowners, the Amended Ordinance violates the Equal Protection

Clause.  (Id. ¶ 98.)  Furthermore, as we discussed earlier, we will interpret

plaintiffs' argument that the Amended Ordinance burdens the fundamental right to

establish a home and bring up children as an Equal Protection claim as well.  (Id. ¶

97.)

The Equal Protection Clause of the Fourteenth Amendment provides that the

State shall not "deny to any person within its jurisdiction the equal protection of

the laws."  U.S. CONST. amend. XIV, § 1.  This clause requires that states not

create a classification that disadvantages a suspect class or impinges upon a

fundamental right unless their purpose is narrowly tailored to further a compelling

18

governmental interest.  Plyler v. Doe, 457 U.S. 202, 216-17 (1982).  Similarly,

states cannot create a classification that disadvantages a quasi-suspect class unless

their purpose is substantially related to an important government interest.   United

States v. Virginia, 518 U.S. 515, 533 (1996).  Finally, if no suspect or quasi-

suspect class is involved and no fundamental right is burdened, a state may create a

classification so long as it is rationally related to a legitimate state interest.  Kimel

v. Florida Board of Regents, 528 U.S. 62, 83 (2000).

As for plaintiff's challenge that the Amended Ordinance requires tenants to

comply with registration and identification requirements that are not imposed on

homeowners, we find that this classification does not target a suspect or quasi-

suspect class.  Tenants, or non-landowners, have never been held to be a suspect or

quasi-suspect class deserving of a heightened standard of review.  Lock Haven

Property Owners' Ass'n v. City of Lock Haven, 911 F. Supp. 155, 160 (M.D.Pa.

1995) (Nealon, J.) (finding that tenants and non-landowners are not a suspect or

quasi-suspect class).  Indeed, a suspect class or quasi-suspect class is one that has

been historically used for discrimination, such as race, national origin, religion,

alienage, and gender.  Landownership does not fall into this category.  Thus, we

find that the appropriate standard is whether the requirements imposed on tenants

in the Amended Ordinance are rationally related to a legitimate state interest.

Applying the rational basis standard to this registration requirement, we find that it is rationally related to a legitimate government interest. The stated purpose of the Amended Ordinance is to "protect and promote the public health, safety of [Berwick's] citizens, to establish rights and obligations of owners and occupants relating to the rental of certain residential rental units in the Borough of Berwick and to encourage owners and occupants to maintain and improve the quality of rental housing within the community." § 141.2. We have no doubt that this is a legitimate interest. Furthermore, the registration requirement imposed on tenants bears a rational relation to that interest because by knowing the identity of the tenant of a particular rental unit, it becomes much easier to enforce the Amended Ordinance on that tenant.

Finally, we do not find persuasive the argument that the Amended Ordinance burdens the fundamental right to establish a home and bring up children with respect to tenants. Although we agree that there is a fundamental right to establish a home and bring up children, we do not find that the Amended Ordinance interferes with this right. As we just mentioned, the Amended Ordinance is a comprehensive regulatory scheme for residential rental properties. It does not explicitly or effectively ban all residential properties. Therefore, we find that it does not burden the fundamental right to establish a home and bring up children.

Thus, for all the reasons we have just discussed, we will dismiss Count III of the complaint.

## VI.  Count IV - Fourth Amendment

In their fourth count, plaintiffs assert that the Amended Ordinance is unconstitutional because it violates the Fourth Amendment's prohibition against unreasonable searches.  Specifically, plaintiffs contend that by requiring owners to submit floor plans of each residential rental unit and requiring both owners and tenants to allow a Code Enforcement Officer to inspect residential rental units at reasonable times and upon reasonable notice, this violates the Fourth Amendment. (Rec. Doc. No. 15, ¶¶ 117-120.)

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ."  The purpose of this amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  Camara v. Municipal Court, 387 U.S. 523, 528 (1967).  Thus, a search of private property without consent is "unreasonable" unless authorized by a search warrant or their exists a warrant exception.  Id. (citations omitted).

In Camara, the defendant was criminally charged after refusing to allow

housing inspectors to conduct a warrantless search of his residence as authorized in the housing code. Id. at 526-27. The Court ruled that although administrative searches are less intrusive than searches conducted to investigate criminal activity, they nevertheless intrude upon privacy interests protected by the Fourth Amendment and absent consent or a warrant exception, must be conducted pursuant to a search warrant. Id. at 530, 534. Yet, the Court noted that a reduced level of probable cause would justify the issuance of a warrant for inspections that promote health and safety as opposed to a search aimed at the discovery of evidence of a crime. Id. at 538. For example, the passage of a certain period of time without inspection might of itself be sufficient for the issuance of a warrant. Id.

In the instant case, the Amended Ordinance requires owners to permit annual inspections "at reasonable times upon reasonable notice." § 141.4.13. Furthermore, the Amended Ordinance permits a reinspection upon the finding of a violation or each time a unit is vacated. § 141.4.15. If an owner refuses to allow an inspection to take place, he or she has violated the Amended Ordinance. § 141.4.15G. As for the tenant, the Amended Ordinance states that the tenant "shall permit inspections by the Code Enforcement officer of the premises at reasonable times, upon reasonable notice." § 141.5.9. Furthermore, the Amended

Ordinance permits the Code Enforcement Officer to seek a warrant for the purpose of compelling an inspection.  § 141.4.15H.  Finally, the Amended Ordinance requires that an owner submit "a floor plan, drawn to scale, with the measurements of each room within the residential rental unit" in order to obtain a license.  § 141.6(1)(F)

We reiterate that plaintiffs are launching a facial challenge of the Amended Ordinance.  Therefore, plaintiffs must establish that no set of circumstances exist under which the statute could be valid.  <u>Salerno</u>, 481 U.S. at 745.  One interpretation of the Amended Ordinance is that both the owner and the tenant can be cited for refusing to allow a warrantless inspection.  Indeed, the Amended Ordinance states explicitly that it is a violation for the owner to refuse to allow an inspection and also states that a tenant "shall" permit an inspection.  §§ 141.4.15G; 141.5.9.  Yet, another interpretation would be that if an owner or tenant refuses to allow an inspection, the Code Enforcement Officer's recourse would be through securing a search warrant at the reduced level of probable cause discussed in <u>Camara</u>.  In support of this interpretation, we note that the Amended Ordinance permits the Code Enforcement Officer to seek a warrant for the purpose of compelling an inspection.  § 141.4.15H.  Furthermore, defendant argues this is the proper interpretation of the Amended Ordinance.  (Rec. Doc. No. 19, at 25.)

This is relevant because it is the defendant who enacted the Amended Ordinance. Because the Amended Ordinance has yet to be enforced, it is unclear whether Berwick will indeed attempt to issue citations to owners and tenants who refuse inspection or whether Berwick will resort to obtaining a search warrant.  Therefore, we find that plaintiff cannot establish that no set of circumstances exists under which the statute could be valid and plaintiffs' facial attack must fail.  It is worth noting, however, that if Berwick does attempt to issue citations for refusing to consent to an inspection, or obtains consent by threatening to issue a citation (which might not be voluntary consent), this could be contrary to the Supreme Court's ruling in <u>Camara</u> and constitute a Fourth Amendment Violation.  <u>But</u> <u>see</u> <u>Reedy v. Borough of Collingswood</u>, 2005 WL 1490478, at * 5 (D.N.J. 2005) (Simandle, J.) (distinguishing case from <u>Camara</u> because ordinance only allowed entry by inspection officers for purpose of inspections and only applied to rental properties, as opposed to the ordinance in <u>Camara</u> which allowed entry by "all authorized employees" to perform "any duty" and applied to personal dwellings).

Finally, as to the requirement that an owner submit a floor plan in order to obtain a license, we also believe that plaintiff fails to state a claim upon which relief can be granted.  The Fourth Amendment protects against "unreasonable <u>searches</u>."  (emphasis added).  The Supreme Court has held that in order to

constitute a search, an individual must have a "reasonable expectation of privacy."
Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).  In order
to determine whether an individual had a reasonable expectation of privacy, we
must determine whether the individual had a subjective expectation of privacy and
whether that expectation is objectively reasonable.  Smith v. Maryland, 442 U.S.
735, 740 (1979) (citing Katz, 389 U.S. at 351, 361).  Applying these standards to
the requirement that owners submit floor plans of each rental unit in order to obtain
a license, we do not find that this requirement constitutes a search.  Even if any of
the owners did hold a subjective expectation of privacy in the layout of their rental
units, we find that such an expectation is not objectively reasonable.  The
submission of a floor plan is much less intrusive than allowing an individual to
actually enter a rental unit.  Furthermore, the owner is submitting the floor plan of
a rental unit that he or she has chosen to rent to a tenant in a commercial enterprise,
not his or her own private residence.  Finally, as defendant correctly points out, if
we were to accept plaintiffs' argument, a requirement that a builder submit his or
her building plans to the local government for approval in order to obtain a
building permit would constitute a search, which is a result that we cannot accept.
(Rec. Doc. No. 23, at 10.)  Therefore, we find that the requirement that owners
submit floor plans of each unit is not a search and therefore does not violate the

Fourth Amendment.  Therefore, having rejected all of plaintiffs' Fourth

Amendment claims, we will dismiss Count IV of the complaint.

## VII.  Remaining Counts

The remaining counts of plaintiff's complaint are that the Amended

Complaint violates Pennsylvania's Borough Code (Count V), Pennsylvania's

Landlord and Tenant Act (Count VI), the right to privacy set out in both the United

States Constitution and the Pennsylvania Constitution (Count VII); and the

limitations on police powers set out in the Pennsylvania Constitution (Count VIII).

As for the federal portion of plaintiff's right to privacy claim, plaintiffs

allege that the requirements that tenants appear in person and provide two forms of

identification in order to register as a tenant, that owners register each rental unit

and provide the names of current tenants, that owners maintain documents

containing the names of current tenants and other information in the particular

rental unit, that owners and tenants allow yearly inspections, and that owners

inform Berwick of any new tenants, violates the right to privacy set out in the

Constitution.  (Rec. Doc. No. 15, ¶¶ 144-55.)

The Supreme Court has identified two privacy interests protected by the

constitution.  Whalen v. Roe, 429 U.S. 589, 599-600 (1977).  "One is the

individual interest in avoiding disclosure of personal matters, and another is the

interest in independence in making certain kinds of important decisions." Id.  With

respect to an individual's privacy interest in avoiding disclosure of personal

matters, it is necessary to balance the individual's right to privacy with the public

interest in disclosure.  Trade Waste Management Ass'n, Inc. v. Hughey, 780 F.2d

221, 234 (3d Cir. 1985) ( "Disclosure may be required if the government interest in

disclosure outweighs the individual's privacy interest.")

     As to the requirement that tenants register by presenting two forms of

identification, we first note that we respect that individuals have a privacy interest

in their names and addresses.  See Paul P. v. Verniero, 170 F.3d 396, 404 (3d Cir.

1999) (noting that disclosure of home addresses implicates individuals' privacy

interest).  Nevertheless, we do not find that this requirement unconstitutionally

infringes upon that interest.  The Amended Ordinance requires identification for

the sole purpose of registration and states that Berwick "shall not retain a record of

the tenant's Social Security number, if any, driver's license or photo identification

number, date of birth, passport number or country of issuance or similar

confidential information but shall review these documents solely to verify

identity." § 141.4.16B.  Therefore, the infringement upon the privacy interest is

extremely minimal because it is used for such a narrow purpose.  Furthermore, we

find the public interest to be important, because as we have discussed, by knowing

27

the identity of the tenant of a particular rental unit, it becomes much easier to enforce the Amended Ordinance on that tenant and to "protect and promote the public health, safety of [Berwick's] citizens." § 141.2.  Therefore, we reject plaintiff's claim that the registration requirement violates plaintiffs' constitutional right to privacy.

As for the remaining privacy claims, we will also dismiss them.  The requirement that owners provide the names of current tenants, inform Berwick of any new tenants, and maintain documents in each rental unit that contains the names of the current tenants, does not violate the owner or renters' privacy rights. We do not believe that owners have a privacy interest in their tenants' names.  As for the tenants, we have just discussed that they do have a privacy interest, but we find that the invasion into that interest by these requirements is so minimal that it is outweighed by public interests promoted by these requirements.  Similarly, the requirement that owners register each rental unit, provide a floor plan, and allow annual inspections is not an invasion of the owner or renters' privacy rights.  We have already discussed that the floor plan requirement is not a "search" under the Fourth Amendment.  Therefore, we also believe that this requirement is not an invasion of privacy.  As to the inspection requirement, we have discussed that there is no Fourth Amendment violation if these inspections are conducted pursuant to

voluntary consent or a search warrant.  For the same reason, these inspections

would not constitute an invasion of privacy.  Finally, we do not believe there is any

basis for arguing that the registration requirement is an invasion of privacy.

Therefore, we will dismiss the federal portion of plaintiffs' invasion of privacy

claims.

Thus, having dismissed all plaintiffs federal question claims, we must now

consider whether to exercise jurisdiction over plaintiffs' supplemental state law

claims.  28 U.S.C. § 1367(c)(3) states that a district court may decline to exercise

supplemental jurisdiction over a claim if "the district court has dismissed all claims

over which it has original jurisdiction."  The Third Circuit has stated that it is the

rule of this circuit that "once all claims with an independent basis of federal

jurisdiction have been dismissed the case no longer belongs in federal court."

Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d Cir. 1990).  Therefore,

we will decline to exercise jurisdiction over the state law claims.

Finally, we note that plaintiffs have argued that in their opposition brief that

if the court concludes that the amended complaint should contain more detailed

factual allegations or a better clarification of its legal foundation, the remedy for

such a defect is not dismissal, but rather to allow plaintiffs to amend the complaint.

(Rec. Doc. No. 22, at 33.)  Dismissal without leave to amend is justified only on

the grounds of bad faith, undue delay, prejudice, or futility.  <u>Alston v. Parker</u>, 363

F.3d 229, 236 (3d Cir. 2004) (citations omitted).  In the instant case, we believe

amendment would be futile.  This case hinged entirely on the language in the

Amended Ordinance.  In other words, it was a legal dispute, not a factual one.

Therefore, no additional factual allegations would change our decision that the

complaint be dismissed and leave to amend would be futile.


**CONCLUSION:**

For the reasons stated above, we find that plaintiffs have failed to state a

claim upon which relief can be granted with respect to all federal question claims

presented and will dismiss them.  We will decline to exercise jurisdiction over all

supplemental state law claims.

   s/ James F. McClure, Jr.    <br>
James F. McClure, Jr.<br>
United States District Judge

IN THE UNITED STATES DISTRICT COURT<br>
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERWICK AREA LANDLORD     :<br>
ASSOCIATION, et al.,         :<br>
                           :     Civil Action No. 4: 07-CV-316<br>
            Plaintiffs,   :<br>
                           :<br>
     v.                    :<br>
                           :     (Judge McClure)

30

BOROUGH OF BERWICK,        :
                                  :
                   Defendant.  :
                                  :

# O R D E R

July 16, 2007

In accordance with the accompanying Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.     Defendant's motion to dismiss is GRANTED as to all federal question

claims.  (Rec. Doc. No. 18.)

2.     Plaintiff's federal question claims are dismissed without prejudice for

failure to state a claim upon which relief can be granted

3.     The court declines to exercise jurisdiction over all state law claims.

4.     Any stay of enforcement of the Landlord Registration Ordinance

enacted April 16, 2007, whether voluntary or involuntary, is lifted.

5.     The clerk is directed to close the case file.

                      __s/ James F. McClure, Jr._____
                      James F. McClure, Jr.

United States District Judge